FILED

MAY 2 7 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ELLEN H. BENSON,                          )
                                          )
                    Plaintiff,            )          CV 08-175-AC
                                          )
        v.                                )          FINDINGS AND
                                          )          RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner of Social )
Security,                                 )
                                          )
                    Defendant.            )
_____)

ACOSTA, Magistrate Judge:

        Plaintiff Ellen Benson challenges the Commissioner's decision denying her applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act.  The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  The

Commissioner's decision should be affirmed.

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). He reached the conclusion at step four of the decision-making process that Benson remains capable of performing her past work.

Benson contends the ALJ improperly evaluated the evidence and reached a residual functional capacity ("RFC") assessment that did not accurately reflect all of her functional limitations. She argues this led the ALJ to elicit testimony from the vocational expert ("VE") with improper assumptions and to erroneously conclude that she remains capable of working.

**I.    RFC Assessment**

The RFC assessment describes the work-related activities a claimant can do on a sustained, regular, and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 *5. Benson contends the ALJ failed to assess her RFC accurately because he improperly evaluated the evidence of functional limitations resulting from three of her medical conditions and from medication side effects, discounted the statements of lay witnesses, and rejected the opinions of mental health care professionals.

A.    **Evidence of Functional Limitations**

Benson contends the ALJ improperly evaluated her alleged functional limitations from headaches, seizures, a fractured left wrist, and the side effects of medications. One basis of Benson's argument is that the ALJ identified a left wrist fracture, seizures, and headaches when listing the impairments that, in combination, satisfied the *de minimis* severity requirement at step two of the decision-making process, but did not attribute specific limitations in the RFC assessment to those three conditions. *Id.* at 22. At step two, the ALJ must determine whether the claimant has any combination of impairments which significantly limits her ability to do basic work activities. 20 C.F.R. § 404.1520(c), 416.920(c). It is not necessary that each component within the combination of impairments independently meet the *de minimis* severity requirement. Nor is the ALJ required to attribute specific limitations in the RFC assessment to each component of the combination that satisfies step two. The ALJ is required only to consider all the allegations and evaluate all the evidence of functional limitations and restrictions. SSR 96-8p, 1996 WL 374184 *5.

The ALJ considered Benson's allegations of limitations from these conditions. Benson alleged disability beginning December 1, 2003, due to seizures and migraines. Admin. R. 183-84. She testified she could not work, in part because of problems with her left hand. *Id.* at 1506. Benson testified she experiences migraines about six times per month and about four of these cannot be controlled by medication. *Id.* at 1513. The ALJ found her subjective statements about the intensity, persistence, and limiting effects of these symptoms not credible. *Id.* at 24. Benson does not challenge the ALJ's credibility determination and it is supported by abundant evidence in the record.

The ALJ considered all the evidence Benson presented regarding functional limitations from her wrist fracture, seizures and headaches. Treatment records show Benson fell while riding her bicycle and injured her left wrist in February 2006. *Id.* at 941-42. A CT scan revealed she had fractured one of the small bones at the base of the thumb on the side of her wrist. *Id.* at 1308. In December 2006, the fracture had not healed and a bone graft was done. *Id.* at 1429. This also failed to result in a union of the fracture and Charles Layman, M.D., recommended a wrist fusion. *Id.* at 1455. This was the extent of the medical records regarding Benson's left wrist at the time of the ALJ's decision on June 4, 2007. Dr. Layman provided a post-decision statement to the Appeals Council opining Benson was disabled due to residual discomfort in the left wrist and chronic use of pain medications. *Id.* at 1491.

These medical records establish the existence of a fracture in one of the small bones of the left wrist, but do not establish functional limitations. The ALJ noted that Benson and her third party witnesses indicated she engaged in an active lifestyle. She performed arts and crafts, sewing, quilting, household chores, used public transportation, and applied for jobs requiring normal use of the left hand. *Id.* at 645. The only evidence of ongoing functional limitations from her wrist injury is Benson's testimony, which the ALJ properly discounted. While it is reasonable to expect some impairment of function from such an injury, Benson failed to supply credible evidence establishing such impairment. Accordingly, Benson failed to carry her burden of proof with respect to this issue. The ALJ reasonably accounted for all the evidence of impairment from the wrist injury by limiting the RFC to the lifting requirements of medium work.

Dr. Layman's post-decision statement to the Appeals Council does not establish functional limitations. When the Appeals Council considers materials not seen by the ALJ and concludes the

materials provide no basis for review of the ALJ's decision, a reviewing court may consider the additional materials when it determines whether there is substantial evidence supporting the Commissioner's decision. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir.), *cert. denied*, 121 S. Ct. 628 (2000). *See also Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

Here the Appeals Council reviewed Dr. Layman's post-hearing opinion and found it did not provide a basis for changing the ALJ's decision. Admin. R. 9. The Appeals Council found the opinion letter conclusory and unsupported by clinical findings. Under these circumstances it is reasonable to conclude Dr. Layman based his opinion that Benson is "disabled" by wrist discomfort primarily on her subjective reports. The ALJ properly found Benson's subjective reports unreliable. Without clinical support corroborating her subjective claims, Dr. Layman's opinion is no more credible than the statements upon which it was based. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Accordingly, Dr. Layman's opinion does not undermine the evidentiary basis of the ALJ's decision.

The ALJ also considered all the evidence of seizures. Benson's seizures began in December 2003. Admin. R. 100. Thomas Phipps, M.D., could not determine the etiology of the seizures, but started an anti-convulsant medication. *Id.* at 1088-90. In March 2004, Benson reported experiencing about one seizure per week and Dr. Phipps started a second anti-convulsant medication. *Id.* at 1087. In April 2004, Benson completed two subjective seizure questionnaires indicating she was experiencing about three seizures per month which left her feeling slow and "headachy" afterward. *Id.* at 134-35, 141. In October 2004, Benson admitted irregular compliance with medication therapy, and Dr. Phipps opined that poor patient compliance was a significant component of her problems. *Id.* at 1286. In November 2004, Benson reported only two episodes that might have been seizure-

like spells in the preceding months. *Id.* at 1083. At the next follow up with Dr. Phipps in May 2005,

Benson revealed that she had begun a methadone treatment program for abuse of narcotic pain

medications. Dr. Phipps noted that her anti-seizure medication management could not be stabilized

until her substance abuse issues were sorted out. *Id.* at 1082. In December 2005, Phipps reported

two or three small seizures during the preceding several months, but Benson did not appear to feel

this was a big issue. *Id.* at 1079. In September 2004 and January 2005, state agency medical experts

reviewed all the evidence in the case record and concluded that Benson had a seizure disorder which

was marginally controlled by medication therapy. They opined that Benson should avoid work at

unprotected heights or near machinery or hazards that might cause injury in the event of an

unexpected seizure. *Id.* at 857, 859.

     The ALJ considered the evidence of seizures, accepted that Benson has a seizure disorder,

and incorporated the functional limitations identified by the state agency reviewing physicians into

the RFC assessment. Benson did not cite other evidence of functional limitations from seizures

except her own subjective statements which the ALJ properly found not credible. Accordingly, the

ALJ satisfied his duty to consider Benson's allegations regarding seizures and to evaluate all the

evidence of functional limitations and restrictions from seizures. SSR 96-8p, 1996 WL 374184 *5.

     The ALJ also considered all the allegations and evidence of headaches. In December 2003,

Benson reported a chronic history of headaches occurring three to four times per month and lasting

one and one half days. About half of these were reportedly relieved by Imitrex. Admin. R. 1089.

In May 2004, Benson submitted a subjective headache questionnaire indicating she had suffered

from these severe headaches for 20 years, which includes her entire work history. *Id.* at 179. When

Benson sought substance abuse treatment services for long term abuse of oral opioids, she reported

a corresponding 20-year history of continuous opioid abuse involving daily consumption of 20 tablets of either Vicodin or Percocet. *Id.* at 885-88. Jeffrey Hayes, M.D., mentioned that her migraine history might be due to or influenced by rebound effect from narcotics. *Id.* at 885. Benson's reporting continued to be inconsistent. For example, she denied alcohol use to Dr. Hayes, but contemporaneously admitted consuming three to six vodkas per day during her intake interview. She reported only three migraines per month on average to Dr. Hayes, consistent with her subjective headache questionnaire. At other times she claimed rates of frequency ranging from three per month to eight per month. *Id.* at 885-88, 893, 1077, 1082.

The evidence, other than Benson's properly discounted subjective statements, does not establish functional limitations or restrictions in the ability to perform work related activities attributable to headaches. Benson objects to the ALJ's finding that her headaches are generally controlled by medication. She also objects to the ALJ's determination that the case record is not consistent with her claim of headaches lasting two or three days. Benson's own headache questionnaire indicates only three headaches per month, half controlled by medications and the other half lasting up to one and one half days. *Id.* at 179-81. Benson's reported activities and her statements to treating sources do not indicate frequent headaches lasting several days. Other than her discounted testimony, Benson points to no evidence of additional functional limitations. Accordingly, she has failed to carry her burden of proof.

The ALJ considered the allegations and evidence of medication side effects. Benson testified her medications cause dry mouth, constipation, diarrhea, loss of appetite, trouble sleeping, poor concentration, irritability, and difficulty getting along with others. *Id.* at 1512-13, 1515-16. The ALJ found these claims largely unsupported by Benson's contemporaneous reports to treating sources.

Benson had a dry mouth and constipation in March 2007, but had begun a new laxative which she reported to be helpful. *Id.* at 1446. She had a brief loss of appetite in February 2007, but her weight remained stable. *Id.* at 1449. Benson does not cite any evidence of functional limitations in work-related activities from medication side effects, other than her properly discounted testimony.

Benson argues this silence is insufficient to prove she did not have side effects. This argument reverses the applicable burden of proof. The Social Security Act places on the claimant the initial burden of producing evidence and proving the functional limitations that make up the claimant's RFC. 42 U.S.C. §§ 405(g), 423(d)(5); *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). Accordingly, the ALJ was not required to prove the absence of side effects; he was required to consider the allegations and evidence of side effects. Other than her properly discounted testimony, Benson offered none. Benson failed to satisfy her burden of showing functional limitations from medication side effects.

In summary, Benson's contention that the ALJ failed to evaluate the evidence of functional limitations from her fractured wrist, seizure disorder, headaches, and medications side effects should not be sustained because Benson failed to produce credible evidence of such functional impairments.

### B.    Lay Witness Statements

Benson contends the ALJ improperly discounted the statements of lay witnesses George Thrower, Roselyn Handy, and Greg Lemoire. An ALJ must consider the statements of non-medical sources who are in a position to observe a claimant's symptoms and daily activities. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006). Such lay witnesses are competent to testify regarding the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot

be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

George Thrower testified that he let Benson work part-time in his one-person shoe repair shop for six to eight months. She waited on customers, took information regarding the repairs they requested, and put the shoes and the information on a shelf. Thrower could not afford to pay an employee and the arrangement ended after several months. Thrower testified that Benson did not have a personality that drew customers in. She was too nervous to relate to people in a way that made them feel comfortable in his shop. Admin. R. 1527-31.

The ALJ found Thrower's testimony generally credible, including his statements regarding Benson's difficulty interacting with the public while working in his shop. The ALJ found Thrower's testimony did not address Benson's ability to perform tasks that excluded extensive interaction with the general public. *Id.* at 28. The ALJ addressed the personality difficulties Thrower described by limiting Benson's RFC to exclude work in close proximity to others, except familiar, repetitive clientele. *Id.* at 23. The ALJ's RFC assessment reflects a reasonable interpretation of Thrower's testimony. The ALJ did not disregard or discount Thrower's testimony. Accordingly, he was not required to explain his reasons for doing so.

The record includes written statements from April 2004, prepared by Benson's mother, Roselyn Handy. *Id.* at 166-78. Benson contends the ALJ improperly rejected Handy's statement that Benson sleeps very long hours. *Id.* at 167. The ALJ did not reject this observation, but found no evidence to suggest she had a medical condition that would require excessive sleep. *Id.* at 28. Benson cites no such evidence in her briefs. The ALJ noted that treatment records indicate Benson

was habitually using illicit narcotic pain medications, marijuana, cocaine, and alcohol before entering substance abuse treatment in February 2005. In the absence of medical indications to support excessive sleep, the ALJ could reasonably attribute the sleeping habits Handy observed to Benson's lifestyle habits. Because the ALJ did not reject or discount Handy's statements, he was not required to explain his reasons for doing so.

Finally, Benson contends the ALJ rejected the written statements of Gary Lemoire. Lemoire indicated Benson needs rest after ten minutes of cleaning. He stated Benson lost her last three jobs due to an inability to concentrate or follow directions and short-term memory loss. *Id.* at 273, 274. The ALJ found these statements not credible. He found the treatment records did not include medical findings supporting a condition that would require rest after ten minutes of activity. Benson does not cite any such evidence. The ALJ cited evidence that Benson lost her most recent jobs because she was caught stealing from her employers and not because of problems with concentration, memory, or following directions. *Id.* at 28, 91, 94, 644. The ALJ did not discount Lemoire's statements without comment. He provided reasoning germane to the witness and supported by a reasonable interpretation of the record as a whole.

In conclusion, the ALJ's evaluation of the lay witness statements should be upheld.

### C.    <u>Medical Source Statements</u>

Benson contends the ALJ improperly rejected the opinions of Donna Wicher, Ph.D., state reviewing experts, Bill Hennings, Ph.D., and Frank Lahman, Ph.D., a nurse practitioner, Anna Anderson, P.M.H.N.P., and a marriage and family counselor, Alexandra Saperstein, M.F.T.

Dr. Wicher performed a comprehensive psychodiagnostic evaluation in August 2004 to determine whether Benson had mental, cognitive, or emotional difficulties which would interfere

with her ability to engage in substantial gainful activity. She obtained generally benign findings on her mental status examination, finding Benson oriented and alert, without memory or concentration problems, cognitive deficits, or impairment in common sense or judgment. *Id.* at 645.

Dr. Wicher found no indication of limitations in Benson's ability to perform activities of daily living. Benson's subjective history of problems with interpersonal relationships led Dr. Wicher to find mild to moderate limitations in social functioning, although this was not supported by Benson's pleasant and appropriate interactions with staff related to the evaluation. Dr. Wicher found no indications of any cognitive deficits and Benson's abilities in concentration, persistence, and pace were unimpaired. Dr. Wicher opined there were no psychological deficits so severe as to preclude Benson from full-time employment. Her mild to moderate limitations in social functioning were lifelong and had not precluded full-time employment in the past. *Id.* at 646-47.

The ALJ gave Dr. Wicher's report significant weight. *Id.* at 26. He interpreted Dr. Wicher's opinion to indicate Benson was capable of full-time employment despite lifelong psychological limitations. Benson argues Dr. Wicher actually reached the opposite conclusion, relying on the final sentence of Dr. Wicher's report:

> The primary psychological barrier to returning her to full-time, sustained employment would be the instability of functioning which is inherent in her personality structure and which has been present throughout her life.

*Id.* at 647.

The ALJ's interpretation of Dr. Wicher's opinion is reasonable and rationally accounts for the doctor's statement that Benson's psychological limitations, although lifelong, had not precluded her from sustained full-time employment through most of her adult life. Even if the factual record

could also support the interpretation Benson urges, the court must uphold the Commissioner's rational findings of fact. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

In September 2004, Dr. Lahman reviewed all the evidence in the record and prepared a Mental Residual Functional Capacity Assessment ("MRFC") on the standard agency form. In January 2005, after reviewing all the evidence in the record, Dr. Hennings affirmed and adopted Dr. Lahman's findings. The first two pages of the MRFC comprise a check-box worksheet on which the reviewing expert indicates summary conclusions regarding the claimant's level of impairment in twenty general categories of mental function. On the last page of the MRFC, the reviewing expert is directed to explain those summary conclusions in narrative form. Admin. R. 937, 939.

In the first section of the form, Drs. Lahman and Hennings indicated that Benson had moderate limitations in the general functional categories maintaining concentration and attention for extended periods and accepting instructions and criticism from supervisors. *Id.* at 936-37. Drs. Lahman and Hennings then explained their summary conclusions in narrative form. *Id.* at 939. The ALJ gave this opinion significant weight and included the narrative explanation of their findings in his RFC assessment. *Id.* at 23, 28-29.

Benson argues the ALJ erred by failing to include the moderate limitations indicated as summary conclusions on the first part of the MRFC form in his RFC assessment. This argument should not be sustained. The ALJ adequately accounted for the opinion of Drs. Lahman and Hennings and explained the weight he gave it by including their narrative findings in his RFC assessment.

On January 18, 2005, nurse practitioner Anderson performed an initial psychiatric evaluation for LifeWorks Northwest, in anticipation of taking over the prescribing of Benson's psychotropic medications. *Id.* at 867. Anderson did not identify specific functional limitations or work-related activities that Benson could not perform. The ALJ did not explicitly reject Anderson's report. Nor is Anderson's report inconsistent with the ALJ's RFC assessment. Benson argues the ALJ's RFC assessment did not reflect Anderson's global assessment of functioning ("GAF") score of 55, which is used to indicate moderate symptoms or moderate difficulty in social or occupational functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) 30-32. The ALJ reasonably used the more specific functional limitations identified by Drs. Lahman and Hennings in formulating his RFC assessment. Their findings gave greater definition to the broader term "moderate limitations" and were consistent with Anderson's report. Accordingly, the ALJ did not implicitly reject anything in Anderson's report. The ALJ was not required to give germane reasons for rejecting Anderson's report because he did not reject it.

Saperstein began counseling Benson in the summer of 2005. She responded to a questionnaire regarding Benson's mental impairments in June 2006. She opined that Benson's symptoms would worsen if she tried to work full-time, and that Benson would need to work at a reduced pace, have difficulty getting along with others she would encounter on the job, and be absent from work more than four times a month due to her impairments or treatment. Saperstein opined Benson had been unable to live outside a highly supportive living arrangement for over a year. Admin. R. 1091-98.

The ALJ properly noted that Saperstein is not an acceptable medical source as that term is used in 20 C.F.R. §§ 404.1513, 416.913 and SSR 06-03P, 2006 WL 2329939. Such sources cannot

be used to establish a medical diagnosis or the existence of a medically determinable impairment, but must be evaluated regarding the severity of an impairment and its functional effects. SSR 06-03P, 2006 WL 2329939 at * 3. The ALJ found Saperstein's opinion entitled to little weight. Admin. R. 27. The ALJ evaluated Saperstein's opinion along with the other relevant evidence in the case file and determined it was inconsistent with the treatment records of other sources and with Benson's reported daily activities. This conclusion is supported by substantial evidence, including Benson's work history which showed she did not stop working for medical reasons or due to unreasonable absences or slow pace. Treating sources did not make clinical findings suggesting the deficits Saperstein described. Dr. Wicher concluded Benson had no psychological impairment that would preclude working full time and that her mild to moderate limitations had been lifelong and had not precluded work in the past. Benson's reported activities show she is capable of an active, independent lifestyle and does not need an assisted living facility.

In summary, the ALJ properly evaluated the medical source statements Benson relies on, and found they did not support the functional limitations she claims. Even if the factual record could be interpreted in a manner that supports Benson, the ALJ's findings rationally interpret the record as a whole and should not be disturbed. *Batson,* 359 F.3d at 1193.

## II.    <u>Vocational Evidence</u>

Benson challenges the vocational evidence on two grounds. First, she contends the ALJ elicited vocational testimony from the VE with a hypothetical question that did not contain all of her limitations and restrictions. She contends the ALJ should have included additional limitations based on alleged errors in the ALJ's RFC assessment. Her arguments in support of those errors should be rejected for the reasons discussed previously. The ALJ considered all the evidence and framed his

hypothetical question based on the limitations supported by the record as a whole. The hypothetical limitations reflected reasonable conclusions that could be drawn from the record. An ALJ is not required to incorporate limitations based on evidence that he properly discounted. *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Second, Benson contends the ALJ failed to make findings regarding the functional requirements of her past work before concluding she retained the capacity to perform that work. The ALJ made the necessary findings based on testimony from the VE regarding the exertional and skill requirements of Benson's past work. Admin. R. 29. The VE based her testimony on the tasks Benson described in her written work history and testimony. *Id.* at 1538-41. The ALJ's conclusion that Benson's past work does not require tasks precluded by her RFC assessment is supported by substantial evidence.

## RECOMMENDATION

Based on the foregoing, the ALJ's decision that Benson did not prove disability and is not entitled to disability insurance benefits or supplemental security income under Titles II and XVI of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due June /0, 2009.  If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than June 24, 2009.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

IT IS SO ORDERED.

DATED this 27th day of May, 2009.

John V. Acosta
United States Magistrate Judge